UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HYDROBLEND, INC., | Case No. 1:13-CV-00445-EJL |
| Plaintiff, | **ORDER** |
| v. | |
| NOTHUM MANUFACTURING COMPANY, et al., | |
| Defendants. | |

Before the Court in the above entitled matter is the Defendant's Motion to Dismiss pursuant to Rules 9(b) and 12(b) or, in the alternative, Motion for More Definite Statement pursuant to Rule 12(b)(e). The parties have filed their responsive briefing and the matter is ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

# FACTUAL AND PROCEDURAL BACKGROUND

In September of 2009, Plaintiff Hydroblend, Inc., an Idaho corporation, and Defendant Nothum Manufacturing Company, a Missouri corporation, executed a Letter of Understanding which represented the terms and conditions of the parties' legal understanding and agreement moving forward in a joint venture for the purpose of developing and manufacturing a bread crumb applicator machine, for the industrial food processing marketplace, capable of achieving superior handling and application characteristics for Hydroblend's fresh Nama Panko coating. (Dkt. 1 at ¶ 7) (Dkt. 14-2, Ex. A.) The parties also executed a Term Sheet which summarized the principal terms with respect to the anticipated formation of the joint venture discussed in the Letter of Understanding. (Dkt. 14-3, Ex. B.)[1] Under the terms of the Agreements each party was obligated to make cash contributions as well as adhere to other duties as outlined in the Agreements.

On October 15, 2013, Hydroblend commenced this action by filing a Verified Complaint alleging claims against Nothum arising from the Agreements for: 1) Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing, 2) Breach of Fiduciary and Statutory Duties, 3) Fraud, and 4) Dissolution and Winding Up of the Joint Venture. (Dkt. 1.) The claims relate to Hydroblend's allegations that Nothum failed to perform as required by the Agreements. Generally, Hydroblend alleges Nothum did not

---

[1] The Court will refer to the Letter of Understanding and Term Sheet (Dkts. 14-2 and 14-3, Exhibits A and B) collectively as the "Agreements." When referring to only one of the documents, the Court will use the particular title of that document.

meet certain milestones, failed to manufacture any functional prototype machines, and did not complete regular performance reports. In addition, the claims arise from allegations that Nothum had accepted a purchase order for one machine at a price of $140,000 from King & Prince and had received a $70,000 down payment. (Dkt. 1 at ¶¶ 21-28.) Nothum allegedly never informed Hydroblend about that purchase order or down payment and no machine was ever delivered to King & Prince.

Nothum has filed this Motion to Dismiss arguing the claims fail to state a cause of action as a matter of law or, alternatively, that Hydroblend should be ordered to file a more definite statement. (Dkt. 5.) In addition, Nothum has filed counterclaims against Hydroblend alleging: 1) Breach of Contract, 2) Negligent Misrepresentation, 3) Fraudulent Misrepresentation/Inducement, and 4) Breach of Fiduciary Duty. (Dkt. 20.) In this Order, the Court takes up the pending Motion to Dismiss and finds as follows.

## STANDARDS OF LAW

**1.    Motion to Dismiss**

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading

rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## 2.      Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) provides, in relevant part: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Rule 12(e) motions are "not favored by the courts since pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim." *Griffin v. Cedar Fair*, L.P., 817 F.Supp.2d 1152, 1154 (N.D. Cal. 2011). A motion for

more definite statement is used to provide a remedy for an unintelligible pleading rather than a correction for lack of detail. *See Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F.Supp.2d 1177, 1191 (N.D. Cal. 2009). When a pleading lacks detail and fails to state a claim for relief, the pleading is properly analyzed pursuant to Rule 12(b)(6). *See* Wright & Miller, 5C Federal Practice & Procedure § 1376, at n. 8 (3d ed.). A motion filed pursuant to Rule 12(e) "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). "Such a motion is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." *True v. American Honda Motor Co., Inc.*, 520 F.Supp.2d 1175, 1180 (C.D. Cal. 2007). By contrast, "a Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made." *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D. Cal. 1994).[2]

---

[2] Pursuant to Rule 12(e), Nothum's Motion alternatively asks that the Court order Hydroblend to file a more definite statement. (Dkt. 5.) This request is primarily based on the fact that the Agreements were not attached to the Verified Complaint. (Dkt. 5 at 2-3.) Subsequent to the Motion being filed, Hydroblend attached the Agreements and other documents to its response brief. (Dkt. 14.) Nothum likely knew of the documents making up the Agreements as it has previously signed the same and it also had an opportunity to respond to the documents in its reply brief. (Dkt. 15.) Thus, the Court finds the fact that the Agreements were not attached to the Verified Complaint does not require a more definite statement under Rule 12(e).

**ORDER - 5**

## DISCUSSION

### 1.     Nature of the Motion

Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6). *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). If materials outside the pleadings are considered, the motion is converted to a motion for summary judgment governed by Federal Rule of Civil Procedure 56. *See Jacobsen v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). There are, however, times when documents other than the pleadings can be considered without converting a motion to dismiss into a motion for summary judgment. *See Branch*, 14 F.3d at 453. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Id.*

The Court has reviewed the documents provided by Hydroblend in response to the Motion. (Dkt. 14, Exs. A-C.) Neither party appears to dispute the authenticity of the documents and both parties have referred to and relied upon these documents in arguing their positions on the Motion to Dismiss. (Dkt. 5, 14, 15); *see also Branch*, 14 F.3d at 453. Accordingly, the Court will consider the same in deciding this Motion. The Court finds it appropriate to consider these documents on this Motion to Dismiss without requiring that the Motion be converted to one for summary judgment. Based on the foregoing, Court will consider the Motion as one for dismissal pursuant to Rule 12(b)(6) under the standard of law stated above.

**2.      Motion to Dismiss or Motion for More Definite Statement**

Nothum generally argues because the parties entered into a "joint venture," as opposed to a contract, that Hydroblend cannot recover any alleged damages simply because the joint venture was not successful. Specifically, Nothum maintains that the terms of the Agreement control and the facts alleged in the Complaint fail to support the claims. (Dkt. 5.) Alternatively, Nothum asks that Hydroblend be required to file a more definite statement of its claims. (Dkt. 5.) Hydroblend counters that the facts alleged in the Complaint are sufficient to plausibly state the claims raised therein. (Dkt. 14.) Alternatively, Hydroblend asks that the Court allow it leave to amend the Complaint.

**A.      Breach of Contract and Covenant of Good Faith and Fair Dealing**

"The elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Edged In Stone, Inc. v. Northwest Power Systems*, LLC, 321 P.3d 726, 730 (Idaho 2014) (quoting *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 278, 297 P.3d 232, 241 (2013)). "An implied contract occurs where 'there is no express agreement but the conduct of the parties implied an agreement from which an obligation in contract exists.'" *Wandering Trails, LLC v. Bib Bite Excavation, Inc.*, No. 40124, 2014 WL 2765956, at *5 (Idaho June 18, 2014) (quoting *Forest Prod. Inc. v. Chandler Supply Co.*, 518 P.2d 1201, 1205 (Idaho 1974). "For a contract to exist, a distinct understanding that is common to both parties is necessary. An enforceable contract must be complete, definite, and certain in all of the contract's material terms." *Id.* (citations omitted). "The

implied covenant of good faith and fair dealing 'requires the parties [to a contract] to perform, in good faith, the obligations required by their agreement.'" *Silicon Intern. Ore, LLC v. Monsanto Co.*, 314 P.3d 593, 602 (Idaho 2013) (quoting *Fox v. Mountain W. Elec., Inc.*, 52 P.3d 848, 855–56 (Idaho 2002)).

The Complaint here alleges the parties entered into a contract to engage in a joint venture for the purpose of developing, manufacturing, and selling bread crumb applicator machines. (Dkt. 1 at ¶ 33.) It goes on to allege that Hydroblend performed all of its obligations under the Agreements and Nothum materially breached the terms and conditions of the Agreements as well as the implied covenant of good faith and fair dealing by its acts and omissions resulting in damages to Hydroblend. (Dkt. 1 at ¶¶ 32-39.)

Nothum asserts the Complaint fails to state a cause of action because the Agreements were not a contract for the delivery of goods but were instead a joint venture that did not guarantee the development of a marketable product. (Dkt. 5 at 3-4.) Further, Nothum argues its failure to disclose the unfulfilled purchase order with King & Prince cannot constitute a material breach of any fiduciary or statutory duties nor are there any resulting damages. (Dkt. 5 at 4) (Dkt. 15 at 8.) Hydroblend counters that the Agreements were for the delivery of goods in the form of a bread crumb applicator machine to be manufactured by Nothum and that the Complaint alleges sufficient facts to state a plausible claim. (Dkt. 14 at 4-5.)

Having reviewed the Complaint and the parties arguments, and taking the factual allegations to be true, the Court finds the First Cause of Action in the Complaint states a plausible claim for breach of contract and/or breach of the implied covenant of good faith and fair dealing. The factual allegations in Paragraphs 7-31 allege the existence of a contract, duties and obligations imposed upon each party to the contract, and breach of the contract by Nothum's failure to perform those duties and obligations. (Dkt. 1.) In a separate section of the Complaint, Hydroblend alleges the damages it claims to have incurred include the money it contributed to the joint venture, lost past and future earnings, lost business and investment opportunities, and interest and finance charges. (Dkt. 1 at 61.) While Nothum disputes each of those elements exists, the fact remains that Hydroblend has alleged a plausible claim for breach of contract and/or the implied covenant of good faith and fair dealing. Whether Hydroblend's claim survives a more substantive challenge remains to be seen.

## B. Breach of Fiduciary and Statutory Duties

The second cause of action alleges Nothum owed fiduciary duties to Hydroblend and the joint venture as detailed in the Agreement and Idaho Code § 53-3-404 and that Nothum breached those duties and general standards of conduct by engaging in willful fraudulent acts and omissions regarding the King & Prince purchase order and down payment. (Dkt. 1 at ¶¶ 40-44.) Nothum argues the failure to notify Hydroblend of the unfulfilled purchase order does not give rise to a breach of any fiduciary duty and there are no resulting damages alleged. (Dkt. 5 at 4.) Hydroblend maintains that Nothum had a

fiduciary duty under the Revised Uniform Partnership Act (RUPA), 53-3-101 *et seq.*, that

it breached by failing to provide a true and correct accounting of the King & Prince

purchase order as well as the amount received from King & Prince. (Dkt. 14 at 6.)

"[F]iduciary relationships are ' commonly characterized by one party placing

property or authority in the hands of another, or being authorized to act on behalf of the

other.'" *City of Meridian v. Petra, Inc.*, 299 P.3d 232, 248-49 (Idaho 2013) (quoting

*High Valley Concrete, L.L.C. v. Sargent*, 234 P.3d 747, 752 (Idaho 2010)). The Idaho

Supreme Court has stated:

> The term fiduciary implies that one party is in a superior position to the
> other and that such a position enables him to exercise influence over one
> who reposes special trust and confidence in him.... As a general rule, mere
> respect for another's judgment or trust in this character is usually not
> sufficient to establish such a relationship. The facts and circumstances must
> indicate that the one reposing the trust has foundation for his belief that the
> one giving advice or presenting arguments is acting not in his own behalf,
> but in the interests of the other party.

*Id.* (quoting *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 853 (Idaho

1991)).

"Establishing a claim for breach of fiduciary duty first requires a finding that a

fiduciary relationship exists." *City of Meridian*, 299 P.3d at 249 (citation omitted).

"Generally speaking, where one party is 'under a duty to act or to give advice for the

benefit of the other upon a matter within the scope of the relation,' a fiduciary

relationship exists." *Id.* (*quoting Beaudoin v. Davidson Trust Co.*, 263 P.3d 755, 759

(Idaho 2011)). A fiduciary relationship, however, "does not exist when parties are dealing

with one another at 'arm's length.'" *Id.* (quoting *Sargent*, 234 P.3d at 752) ("Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction."). "[E]xamples of relationships from which the law will impose fiduciary obligations on the parties" include: "members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends." *Id.* (quoting *Sargent supra*) (quoting *Mitchell v. Barendregt*, 820 P.2d 707, 714 (Ct. App. 1991)).

The Court finds the allegations in the Complaint fail to state a plausible claim for breach of a common law fiduciary duty claim. There is no special relationship alleged to have existed between the parties in this case whereby Nothum had a superior position to Hydroblend. Just the opposite, the parties here appear to be on equal footing when they entered into their joint venture. Accordingly, the Court will grant the Motion to Dismiss as to any common law breach of fiduciary duty claim.

As to the alleged breach of statutory duties, the Complaint cites generally to Idaho Code § 53-3-404, a part of the RUPA. (Dkt. 1 at ¶¶ 41, 43.) That statute provides that as a general rule partnerships are governed by there partnership agreements. Idaho Code § 53-3-404.[3] The statute goes on to delineate provisions which are nonwaivable in a

---

[3] "Because of the similarities between partnerships and joint ventures, partnership law generally governs joint ventures." *Costa v. Borges*, 179 P.3d 316, 320 (Idaho 2008) (citing 46 Am.Jur.2d Joint Ventures § 2 (2006)). "A joint adventure is generally a relationship analogous to but not identical with a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit." *Id.* (quoting *Stearns v. Williams*, 240 P.2d 833, 839 (Idaho 1952)); *see also Edwards v. Edwards*, 842 P.2d 299, 303 (Idaho 1992). Although a partnership is an entity distinct from its partners under the RUPA, "a joint venture is not an entity separate and apart from the parties composing it." *Costa*, 179 P.3d at 321 (quoting *Clawson v. General Ins. Co. of America*,

partnership agreement. Hydroblend's response brief provides more detail by citing to Idaho Code §§ 53-3-404(b)(3)-(5) which are subsections that are intended to ensure a fundamental core of fiduciary responsibility exists by prohibiting a partnership agreement from entirely eliminating the duties of loyalty, care, good faith, and/or fair dealing. (Dkt. 14 at 5-6); *see also* Idaho Code § 53-3-404, comment n. 4.

In this case, it is unclear from the Complaint itself what the basis is for any statutory breach of fiduciary duty claim and what allegations give rise to the claim. The Complaint also does not give notice as to what particular statutory duties were breached; stating only that fiduciary duties were owed as "are more particularly described in Idaho Code § 53-3-404." (Dkt. 1 at ¶ 41.) Although Hydroblend's response brief provides more specifics on this claim, the Complaint itself does not. *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (citation omitted). Accordingly, the Court will grant Nothum's Motion to Dismiss as to the statutory breach of fiduciary claim as well.

## C.     Fraud

Generally, the Complaint alleges fraud based on Nothum's acts and omissions with respect to the King & Prince purchase order and down payment whereby Nothum

---

412 P.2d 597, 601 (Idaho 1966)).

wrongfully procured and retained money belonging to the joint venture and made misrepresentations to induce Hydroblend into entering the joint venture. (Dkt. 1 at ¶¶ 45-48.) The nine elements of a fraud claim are: "(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury." *Bank of Commerce v. Jefferson Enters., LLC*, 303 P.3d 183, 192 (Idaho 2013) (quoting *Chavez v. Barrus*, 192 P.3d 1036, 1047 (Idaho 2008)). "Fraud is to be determined from all the facts and circumstances of the case." *Penn Mut. Life Ins. Co. v. Ireton*, 65 P.2d 1032, 1039 (Idaho 1937).

A complaint that raises a cause of action for fraud requires the pleading party to satisfy the heightened pleading requirements of Rule 9(b) which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Rule 9(b) demands that the circumstances constituting any alleged fraud be plead "specific[ally] enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Claims of fraud must be "accompanied by the who, what, when, where, and how of the misconduct alleged." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Nothum argues the allegations made here are not sufficiently particular to satisfy Rule 9(b) in that the Complaint does not allege a single specific representation to support its fraud claim nor any resulting damages. (Dkt. 5 at 5-6.) Hydroblend responds that it has alleged sufficiently particular facts of fraud to state a plausible claim in essentially two respects: 1) Nothum's 2012 wrongful procurement and retention of a $70,000 deposit from King & Prince and its misrepresentation of the amount of the purchase order from King & Prince and 2) in 2009 when Nothum represented to Hydroblend that it was an experienced manufacturer of similar machines and that it had the capacity and ability to build the three prototype machines. (Dkt. 1 at ¶¶ 45-56) (Dkt. 14 at 6-8.) Hydroblend's Complaint alleges these representations were false and it had relied upon the same when it entered into the joint venture, performed services, and made capital contributions. (Dkt. 1 at ¶ 47.) Nothum counters that promises of future actions or future events cannot make up a claim for fraud and there are no possible damages from the King & Prince purchase order because no machine was delivered. (Dkt. 15 at 10-11.)

As to these particular misrepresentations alleged in the Complaint stated above, the Court finds the Complaint is sufficiently particular to allege a plausible claim for fraud. These specific allegations satisfy the purpose of Rule 9(b) such that they are plead specifically enough to give Nothum notice of the particular misconduct that gives rise to the claim so that it can defend against the charge. *See Kearns*, 567 F.3d at 1124.

Further, the Court finds the alleged misrepresentations do not appear to be based on statements promissory in nature that relate to future actions or failure to perform a

promise in the future. *Gillespie v. Mountain Park Estates, L.L.C.*, 132 P.3d 428, 431 (Idaho 2006). Here, the allegations are that Nothum misrepresented 1) the existence and amount of the purchase order and 2) its own ability and/or capacity to perform. (Dkt. 1 at ¶ 46.) Neither of those allegations are failures to perform future promises but, instead, appear to be allegations of misrepresentations of existing facts which Hydroblend argues were false and are therefore proper facts for a claim of fraud. *Id.* Accordingly, the Court denies the Motion. Again, the Court makes no finding at this stage as to whether this claim will survive a more substantive challenge.

### D. Dissolution and Winding Up of the Joint Venture

Hydroblend's final claim alleges that Nothum's acts and omissions have frustrated the purpose of the joint venture such that the a full and complete accounting should be had and, thereafter, the Court should order dissolution of the joint venture. (Dkt. 1 at ¶ 57-60.) Nothum counters that the Court lacks jurisdiction to adjudicate dissolution of the joint venture because there is no case or controversy regarding the same. (Dkt. 5 at 6.)

Federal subject matter jurisdiction arises in two ways: 1) diversity jurisdiction under 28 U.S.C. § 1332 and 2) federal question jurisdiction under 28 U.S.C. § 1331. This case was filed in federal court alleging diversity jurisdiction. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, ... and is between citizens of different states, or citizens of a State and citizens or subjects of a

foreign state...." 28 U.S.C. § 1332(a)(1)-(2).[4] In a footnote, Nothum contends that Count

Four fails to allege an amount in controversy exceeding the statutory minimum required

by § 1332. (Dkt. 5 at 7 n. 1.) In reviewing the Complaint, the Court finds at this stage that

the allegations facially support a finding that the amount in controversy exceeds $75,000.

*Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000) (citation

omitted). In particular, Hydroblend has alleged it seeks recovery of the money and value

of the property and services it contributed to the joint venture which it values at

approximately $150,000 in addition to other alleged damages. (Dkt. 1 at ¶¶ 8, 61.)

Nothum further challenges that jurisdictional standing has not been shown on this

claim, arguing there is no case or controversy. (Dkt. 5 at 6) (Dkt. 15 at 11.) To establish

Article III standing, Hydroblend must satisfies three irreducible requirements: 1) it has

suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a)

concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical";

2) the injury is "fairly traceable to the challenged action of the defendant"; and 3) it is

"likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992) (internal citations,

quotation marks, and alterations omitted); *accord Friends of the Earth, Inc. v. Laidlaw

Envtl. Servs. (TOC)*, Inc., 528 U.S. 167, 180–81 (2000). A suit brought by a plaintiff

without Article III standing is not a "case or controversy," and an Article III federal court

---

[4]A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). Such a case should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

Here, Nothum argues there is no controversy regarding dissolution that gives rise to jurisdiction because it does not object to dissolution, the joint venture is terminable at will, and there are no allegations of any debts or assets of value to be divided. (Dkt. 5 at 6) (Dkt. 15 at 11.) Hydroblend's Complaint, on the other hand, seeks a court order requiring Nothum to provide a full and complete accounting of its deadlines with Hydroblend and the joint venture and, thereafter, order dissolution of the joint venture. (Dkt. 1 at ¶ 57-60.) Hydroblend's response brief argues the Court should order dissolution and winding up of the joint venture because it is not reasonably practicable for the two entities to carry on together. (Dkt. 14 at 9.) Hydroblend's response brief cites to Idaho Code § 53-3-801(5) which states:

> A partnership is dissolved, and its business shall be wound up, only upon the occurrence of any of the following events:
> ...
> (5) On application by a partner, a judicial determination that any of the following apply:
>
>   (i) The economic purpose of the partnership is likely to be unreasonably frustrated.
>   (ii) Another partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner.
>   (iii) It is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement.

Idaho Code § 53-3-801(5). Hydroblend seeks to recover damages including the money it

invested in the joint venture, lost profits, lost opportunities, and related damages. (Dkt. 1 at ¶ 59, 61) (Dkt. 14 at 11.)

At this stage the Court finds the Complaint appears to allege a justiciable case or controversy sufficient to satisfy Article III. Although Nothum believes there is no dispute to dissolution and no assets to be divided, Hydroblend apparently believes there is or may be assets of the joint venture to be divided including the remainder of its investment in the joint venture. To that end, Hydroblend's claim seeks an accounting of the joint venture's assets and a court ordered dissolution. *See Rowley v. Fuhrman*, 982 P.2d 940, 944 (Idaho 1999) ("The general rule is that an agreement to form a joint venture remains in force until the purpose of the joint venture has been accomplished or has become impossible to fulfill.") (citing 46 Am. Jur. 2d Joint Ventures § 31 (1994)). As such, the Court finds a justiciable case or controversy exists.

As to the sufficiency of the claim, however, the Complaint itself does not cite or refer to Idaho Code § 53-3-801 as the basis for the requested relief. (Dkt. 1 at ¶¶ 57-60.) The citation is instead made in Hydroblend's opposition brief to the Motion to Dismiss. (Dkt. 14 at 8-9.) Because the Complaint fails to cite to the statutory basis for the claim let alone allege any facts giving rise to the claim, the Court finds the claim as stated in the Complaint fails to state a plausible claim for relief. *See Schneider*, 151 F.3d at 1197 n.1 ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a

defendant's motion to dismiss.") (citation omitted). Accordingly, the Court grants Nothum's Motion to Dismiss as to this claim.

**3.      Motion for Leave to Amend**

Hydroblend's response brief concludes with a request that it be allowed to file an amended complaint in the event the Court grants Nothum's Motion to Dismiss. (Dkt. 14 at 11.) Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit Court of Appeals recognizes that "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities," and, therefore, "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Chudacoff v. University Med. Cent. of Southern Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).

The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) rests in the sole discretion of the trial court. The four factors that are commonly used to determine the propriety of a motion for leave to amend are: 1) undue delay, bad faith or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies by amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance of the amendment; and 4) futility of amendment. *C.F. ex rel. Farnan v.*

*Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 n. 5 (9th Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

However, "[t]hese factors . . . are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *Webb*, 655 F.2d at 979 ("The mere fact that an amendment is offered late in the case is . . . not enough to bar it."); *Bowles v. Beade*, 198 F.3d 752, 758 (9th Cir. 1999). "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Webb*, 655 F.2d at 980 (citation omitted). The Ninth Circuit has held that although all these factors are relevant to consider when ruling on a motion for leave to amend, the "crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1189 (9th Cir. 1973). Indeed, prejudice is the touchstone of the inquiry under Rule 15(a). *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Ultimately, "[u]nless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey*, 481 F.2d at 1190.

Here, the Court has granted the Motion to Dismiss as to the Second and Fourth claims. The Court finds it appropriate to grant Hydroblend leave to amend its Complaint. The case is still early in its proceedings as discovery has not yet commenced. It also does not appear to the Court there is any bad faith nor that allowing such an amendment will unduly delay this litigation. Moreover, it does not appear that amendment would be futile.

Accordingly, the Court will grant Hydroblend leave to amend its Complaint and to file the same on or before July 31, 2014.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** as follows:

1) Defendant's Motion to Dismiss or Alternative Motion for a More Definite Statement (Dkt. 5) is **GRANTED IN PART AND DENIED IN PART**. The Motion to Dismiss is granted as to the Second and Fourth Causes of Action and denied in all other respects.

2) Plaintiff's Motion for Leave to Amend (Dkt. 14) is **GRANTED**.

3) Plaintiff shall have until on or before **July 31, 2014** in which to file an amended complaint.

DATED: **July 10, 2014**

Honorable Edward J. Lodge
U. S. District Judge